UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Potocnik,

          Plaintiff,

v.

Anoka County; Dakota County; Hennepin County; Sherburne County; St. Louis County; City of Apple Valley; City of Big Lake; City of Biwabik; City of Bloomington; City of Brooklyn Center; City of Brooklyn Park; City of Cambridge; City of Deephaven; City of Dilworth; City of Duluth; City of Eagan; City of Elk River; City of Farmington; City of Gilbert; City of Golden Valley; City of Hancock; City of Hoyt Lakes; City of Lake City; City of Lakeville; City of Minneapolis; City of Moorhead; City of New Hope; City of New Ulm; City of Redwood Falls; City of Rosemount; City of St. Paul; City of Virginia; City of Wells; Michael Campion, acting in his individual capacity as Commissioner of the Minnesota Department of Public Safety; Ramona Dohman, acting in her individual capacity and, in her official capacity for prospective relief only, as Commissioner of the Minnesota Department of Public Safety; John and Jane Does (1 - 300) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the others named law-enforcement agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; and Entity Does (1-30) including cities, counties, municipalities,

Civil File No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED UNDER FRCP 38(b)**

and other entities in Minnesota and federal
departments and agencies,

                              Defendants.

For his Complaint, for which he demands trial by jury on all claims so triable,

Plaintiff Brian Potocnik ("Potocnik") hereby states and alleges as follows:

## Introduction

This is a case about the reckless abuse of power by numerous law-enforcement

personnel and public employees who created and/or abused the Minnesota Department of

Public Safety's system of maintaining the personal, private information of Minnesota

citizens.  More than 200 Minnesota law enforcement personnel chose to violate federal

law, Minnesota policy and the constitutionally protected privacy rights of Plaintiff Brian

Potocnik.  By casually accessing  Potocnik's protected driver's license information

without any legitimate purpose, these personnel violated the federal Driver's Privacy

Protection Act ("DPPA") and violated his rights under 42 U.S.C. § 1983.  Perhaps more

disturbing, these personnel, charged with protecting and serving the public, knowingly

abused their positions of trust simply to satisfy their shallow desires to peek behind the

curtain of Potocnik's private life.

Beyond the deliberate disregard of Potocnik's rights by police officers, the

creation, maintenance and protection of the system of guarding Minnesota citizens'

private drivers' license information shows an equal indifference to federal law and

Minnesota policy by high-level public officials and administrative departments.  These

officials knowingly created a system that is easily and frequently abused.  Rather than

design a better system or take reasonable steps to prevent its abuse, these officials have

buried their heads in bureaucratic sands, willfully ignoring the widespread, pervasive

violation of law by those with access to the system.  Through lax policies and apathetic

enforcement of the law, these officials, administrative departments and governmental

units have caused direct damage to Potocnik, just as they have trampled upon the clear

legislative protections of all citizens' right to feel secure in their privacy.

### General Background of Law and Facts

1.      This is an action for injunctive relief and money damages for injuries

sustained when over 200 law-enforcement personnel in Minnesota illegally viewed

Plaintiff Brian Potocnik's private, personal, and confidential driver's license information

without a legitimate purpose.

2.      These law-enforcement personnel accessed his private information without a

permissible reason approximately 420 times since 2003.

3.      Attached to this Complaint as Exhibit A is a copy of an audit prepared by

the Minnesota Department of Public Safety showing the accesses of Potocnik's driver's

license information by name, not license plate number, with his driver's license number

redacted, and showing the "station," meaning the police department, sheriff's office, or

other government entity through which the law-enforcement personnel accessed his

information.

4.      Upon information and belief, several of these individuals also used or

disclosed Potocnik's private information.

5.     Each unauthorized use of his private information, made while acting under color of state law, violated Potocnik's federal civil rights and constituted behavior prohibited by federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

6.     Potocnik brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*, and Minnesota common law invasion of privacy.

7.     The aforementioned statutory provision confers original jurisdiction of this Court over this matter.

8.     The amount in controversy exceeds $75,000, excluding interests and costs.

**The Parties**

9.     Potocnik is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

10.     Defendant Anoka County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

11.     Defendant Dakota County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

12.     Defendant Hennepin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

13.     Defendant Sherburne County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

14.     Defendant Saint Louis County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

15.     Defendant City of Apple Valley is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

16.     Defendant City of Big Lake is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

17.     Defendant City of Biwabik is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

18.     Defendant City of Bloomington is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

19.     Defendant City of Brooklyn Center is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

20.     Defendant City of Brooklyn Park is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

21.     Defendant City of Cambridge is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

22.     Defendant City of Deephaven is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

23.     Defendant City of Dilworth is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

24.     Defendant City of Duluth is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

25.     Defendant City of Eagan is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

26.     Defendant City of Elk River is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

27.     Defendant City of Farmington is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

28.     Defendant City of Gilbert is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

29.     Defendant City of Golden Valley is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

30.     Defendant City of Hancock is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

31.     Defendant City of Hoyt Lakes is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

32.     Defendant City of Lake City is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

33.     Defendant City of Lakeville is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

34.     Defendant City of Minneapolis is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

35.     Defendant City of Moorhead is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

36.     Defendant City of New Hope is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

37.     Defendant City of New Ulm is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

38.     Defendant City of Redwood Falls is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

39.     Defendant City of Rosemount is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

40.     Defendant City of Saint Paul is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

41.     Defendant City of Virginia is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

42.     Defendant City of Wells is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

43.     All cities listed in paragraphs 18 to 42 are "municipalities" as defined by Minn. Stat. § 466.01, subd. 1, and can be sued under Minn. Stat. § 466.01 *et seq.*

44.     Defendants Entity Does (1-30) are various cities, counties, municipalities and other entities sited in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. § 1346 or other statutes.

45.     Plaintiff will refer to the entities named in paragraphs 10 - 44 above collectively as the "Defendant Entities" or "Entity Defendants."

46.     Defendants John and Jane Does (1 - 300), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other federal, state, county or municipal entities in Minnesota.

47.     Plaintiff will refer to the individual Defendants (with the exception of the "Commissioner Defendants," "Department of Public Safety Defendants" and "Supervisor Defendants" defined below), including John and Jane Does, collectively as the "Defendant Law-Enforcement Personnel," "Individual Defendants," or "Defendant Individuals."

48.     Plaintiff will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

49.     Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as the Commissioner of the Minnesota Department of Public Safety.

50.     Defendant Ramona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen, of the United States and a resident of the State of

Minnesota, duly appointed and acting in his individual capacity as the Commissioner of the Minnesota Department of Public Safety.

51.    Plaintiff will refer to the Defendants Campion and Dohman collectively, as the "Commissioner Defendants" or "Defendant Commissioners."

52.    Defendants DPS Does (1-30), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

53.    Plaintiff will refer to officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the Department of Vehicle Services' ("DVS") database or Bureau of Criminal Apprehension ("BCA") database, each of which contained Potocnik's private driver's license information (collectively or individually, "DPS Databases") as "Department of Public Safety Does" or "DPS Does.")

## FACTUAL ALLEGATIONS

**I.    Over 200 Minnesota Law-Enforcement Officers Viewed Potocnik's Private Information Outside the Scope of Any Investigation or Official Police Business**

54.    The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers. ("DVS Database").

55.    The DVS Database contains "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, drivers' license numbers, addresses, drivers' license photos, weights, heights, medical information and eye colors of Minnesota drivers.

56.    As early as 2003, law enforcement officers began looking up Potocnik's private information on the Department of Vehicle Services' ("DVS") database.

57.    The officers viewed Potocnik's private personal and highly-restricted personal information from his State-issued driver's license including his home address, color photograph or image, and driver identification number.

58.    Law-enforcement personnel employed by, licensed by, or otherwise accessing through Anoka County impermissibly accessed Potocnik's Private Data two times.

59.    Law-enforcement personnel employed by, licensed by, or otherwise accessing through Dakota County impermissibly accessed Potocnik's Private Data six times.

60.    Law-enforcement personnel employed by, licensed by, or otherwise accessing through Hennepin County impermissibly accessed Potocnik's Private Data 22 times.

61.    Law-enforcement personnel employed by, licensed by, or otherwise accessing through Sherburne County impermissibly accessed Potocnik's Private Data one time.

62. Law-enforcement personnel employed by, licensed by, or otherwise accessing through St. Louis County impermissibly accessed Potocnik's Private Data nine times.

63. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Apple Valley impermissibly accessed Potocnik's Private Data one time.

64. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Big Lake impermissibly accessed Potocnik's Private Data one time.

65. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Biwabik impermissibly accessed Potocnik's Private Data four times.

66. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Bloomington impermissibly accessed Potocnik's Private Data five times.

67. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Brooklyn Center impermissibly accessed Potocnik's Private Data one time.

68. Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Brooklyn Park impermissibly accessed Potocnik's Private Data seven times.

69.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Cambridge impermissibly accessed Potocnik's Private Data one time.

70.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Deephaven impermissibly accessed Potocnik's Private Data three times.

71.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Dilworth impermissibly accessed Potocnik's Private Data one time.

72.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Duluth impermissibly accessed Potocnik's Private Data two times.

73.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Eagan impermissibly accessed Potocnik's Private Data one time.

74.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Elk River impermissibly accessed Potocnik's Private Data one time.

75.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Farmington impermissibly accessed Potocnik's Private Data three times.

76.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Gilbert impermissibly accessed Potocnik's Private Data five times.

77.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Golden Valley impermissibly accessed Potocnik's Private Data two times.

78.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Hancock impermissibly accessed Potocnik's Private Data two times.

79.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Hoyt Lakes impermissibly accessed Potocnik's Private Data one time.

80.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Lake City impermissibly accessed Potocnik's Private Data two times.

81.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Lakeville impermissibly accessed Potocnik's Private Data one time.

82.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Minneapolis impermissibly accessed Potocnik's Private Data 309 times.

83.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Moorhead impermissibly accessed Potocnik's Private Data one time.

84.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of New Hope impermissibly accessed Potocnik's Private Data two times.

85.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of New Ulm impermissibly accessed Potocnik's Private Data two times.

86.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Redwood Falls impermissibly accessed Potocnik's Private Data one time.

87.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Rosemount impermissibly accessed Potocnik's Private Data one time.

88.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of St. Paul impermissibly accessed Potocnik's Private Data seven times.

89.     Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Virginia impermissibly accessed Potocnik's Private Data one time.

90.   Law-enforcement personnel employed by, licensed by, or otherwise accessing through the City of Wells impermissibly accessed Potocnik's Private Data one time.

91.   Individual Defendants viewed Potocnik's Private Data from his State-issued driver's license including his home address, color photograph or image, date of birth, eye color, height, weight, medical information and driver identification number.

92.   Under the direction of the Commissioner Defendants, the Minnesota Department of Public Safety ("DPS") and DPS Does, knowingly created the DVS Database that includes Potocnik's Private Data and the system for law-enforcement personnel to access to that information.

93.   DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly maintained and updated the DVS Database that included Plaintiff's Private Data.

94.   DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly provided access to the DVS Database that included Plaintiff's Private Data.

95.   DPS and DPS Does, under the direction of the Commissioner Defendants, had the ability to determine that drivers' license information, including Plaintiff's Private Data, was being accessed on multiple occasions, by multiple law-enforcement personnel from multiple law-enforcement agencies.

96.   DPS and DPS Does, under the direction of the Commissioner Defendants, had the ability to prevent unauthorized access to the DVS Database, including unauthorized access to Plaintiff's Private Data.

97.     DPS and DPS Does, under the direction of the Commissioner Defendants, failed to prevent unauthorized access to the DVS Database, including access to Plaintiff's Private Data, despite their ability to so protect Potocnik's rights.

98.     The Commissioner Defendants and DPS Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiff's Private Data.

99.     The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law.

100.    In particular, it is the policy of the State of Minnesota, as outlined in Minn. Stat. § 171.12, subd. 7, to comply with the provisions and requirements of the DPPA.

101.    This policy is also set forth in the driver's license application and set forth in statutory language with proper citation to that federal statute.

102.    Defendant Commissioners and DPS Does knowingly disclosed Plaintiff's and others' Private Data and violated state policy by devising and implementing a database that failed abysmally to uphold the privacy rights of Potocnik and others similarly situated as protected by the DPPA.

103.    This failure exposed his information to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit.

104.    This constitutes a knowing disclosure of his information within the meaning of the DPPA.

105.    Defendant Commissioners and DPS Does knowingly devised and implemented a database, and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

106.    The system knowingly devised and implemented by Commissioner Defendants and DPS Does failed to set rules for protecting the privacy rights.

107.    This system permitted, and on information and belief still permits, the accessing of the database from personal computers.

108.    This system permitted the giving out of passwords to others.

109.    This system permitted, and on information and belief may still permit, the accessing of the system by persons without any accountability or, in some instances, without the ability even to trace the person who made the access.

110.    This system does not require adequate training on the use of the DVS database of sworn-law enforcement officers and others with access to it.

111.    Accordingly, the effective monitoring of the system is difficult, if not impossible, under the system as devised and implemented by Commissioner Defendants and DPS Does, who deliberately emphasized and favored the convenience of the system by users—all at the expense of protecting the privacy rights of the persons in the database.

112.    This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to Commissioner Defendants and the DPS Does, and was purposeful.

113.    In failing to properly implement, maintain, and monitor the DVS Database, Commissioner Defendants failed to follow Minnesota state policy.

114.    Many viable methods were and are available to prevent this illegal accessing of private information.

115.    Upon information and belief, the Commissioners and DPS Does actually knew that law-enforcement officers were accessing the databases for impermissible purposes.

116.    Upon information and belief, the Commissioners and DPS Does actually knew that law-enforcement officers were viewing Potocnik's Private Data.

117.    Upon information and belief, the Commissioners and DPS Does acquiesced, facilitated, approved or simply ignored the conduct.

118.    Even if the Commissioners and DPS Does had no actual knowledge of the impermissible uses of the databases they oversaw, upon information and belief, they were reckless in their supervision of their subordinates who did operate the database.

119.    Upon information and belief, the Commissioners and DPS Does were grossly negligent in supervising their subordinates who operated the databases.

120.   Potocnik began having suspicions that law enforcement officers were inappropriately accessing his information in February of 2013.

121.   Potocnik contacted DPS to inquire which law enforcement officers had been viewing his private information.

122.   On February 6, 2013,Potocnik was shocked to learn from DPS that it had determined that law-enforcement officers from approximately 40 different departments and agencies had reviewed his private driver's license information since 2003.

123.   Further, Potocnik learned that over 200 law-enforcement officers had accessed his private driver's license information approximately 420 times without a permissible reason.

124.   Potocnik believes that even more unauthorized accesses and viewings will occur in the future if the policies of the Entity Defendants and other police departments and law enforcement agencies similarly situated are not changed to bring the actual custom and practice of these Entity Defendants and others similarly situated into compliance with their own written rules, with the rules of the Department of Public Safety, and with federal law, including the DPPA.

125.   Included in the audits were personnel from law-enforcement departments associated with the Defendant Entities.

126.   On information and belief, the Individual Defendants primarily used Potocnik's name, not his license plate number, to look up his private, personal information.

127.   The Individual Defendants' identities (John and Jane Does) are not presently known, and cannot be revealed pursuant to the Minnesota Government Data Practices

Act.  Plaintiff anticipates that these yet-to-be-named Individual Defendants will become known through discovery.

128.   The Supervisor Defendants are not presently known.  Plaintiff anticipates that the yet-to-be-named Supervisor Defendants who should have monitored, prevented and stopped the unauthorized access to Potocnik's information will become known through discovery.

129.   The remaining Entity Defendant identities (Entity Does) are not presently known, because not all of the entities identified by the DPS have provided sufficient information to determine if their law enforcement personnel's access to the database was unauthorized.  Plaintiff anticipates that these yet-to-be-named Entity Defendants will become known through discovery.

130.   At the relevant times for this lawsuit, the login page to the DVS website included the following, or a similar, admonition:

> Access to this service is for authorized personnel only conducting official business.  If you do not have the express authorization, you must exit now or face the consequences of violating Chapter 13 of the Minnesota Statutes and other laws.  Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss, misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87 – 609.891.
>
> DVS collects and maintains electronic access data.  This data may be used and disseminated for the purpose of evaluating electronic government services; to prevent unlawful intrusions into government electronic systems; or as otherwise provided by law.

131.   On information and belief, the Individual Defendants' training included admonitions against viewing private driver's license information for unofficial purposes.

132.   Whatever training, monitoring, or inquiry into the officers' usage of the information systems has been adopted is woefully inadequate to ensure that access is used properly and lawfully.

133.   On information and belief, despite this training, Defendant Entities and Defendant Supervisors, allowed their employees, including but not limited to the Individual Defendants, to view Plaintiff's private driver's license information for unlawful purposes.

134.   On information and belief, Defendant Entities, Defendant Supervisors, Commissioner Defendants and DPS Does permitted, condoned, or acquiesced in this illegal access to Plaintiff's private information, and knew or should have known that it was occurring.

135.   On information and belief, this illegal access occurs with regularity not only of Plaintiff's private information, but of other Minnesota drivers' private information.

136.   Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does have lax policies or lax enforcement of these policies that allow for these intrusions.

137.   Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

138.   The extent of this illegal access appears to be widespread and pervasive throughout departments, and is a custom and practice.

139.   The widespread practice is demonstrated by the tolerance of this practice.

140.   There is a customary disregard of punishment for violations, such as a prosecution that was dismissed when an officer's attorney complained that the prosecution for this behavior was akin to "using a sledge hammer to kill a fly" or words to that effect.

141.   Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about the illegal access into previous cases involving this same breach of privacy as saying that "every single cop in the state has done this.  Chiefs on down."

142.   Further evidence is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that "[y]ou used to look up people without a second thought.  You'd look up old friends from high school or just someone you used to know."

143.   Each law-enforcement personnel has a password allowing that individual access to the DPS Database.

144.   Law-enforcement personnel can access the DPS Databases from any computer with internet access.

145.   Officers occasionally gave other individuals their passwords, contrary to requirements.

146.   The system for accessing accountability and responsibility was and is prone to error and fails to protect drivers' private information.

147.   When Defendant law-enforcement personnel viewed Potocnik's private information, they did not do so to carry out official police functions.

148.   The Individual Defendants obtained Potocnik's personal information without probable cause or reasonable suspicion.

149.   Potocnik never waived the protections of the DPPA.

150.   Defendants' actions have violated the United States Constitution, the DPPA, and 42 U.S.C. § 1983.

## II. The Commissioner Defendants Have Known About DPPA Violations

151.    DPS Commissioners Campion and Dohman have been involved with law enforcement for many years.

152.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

153.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; and prior to that time, she was a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

154.    Dohman also served as president of the Minnesota Chiefs of Police Association.

155.    Upon information and belief, the misuse of private information is the main complaint of most police chiefs and human resources personnel.

156.    Former Commissioner Michael Campion served from July 2004 until March 2011.  Before his appointment as DPS Commissioner he was supervisor of the Bureau of Criminal Apprehension ("BCA"), which also maintains a driver's license database.

157.    Before that position, Campion was a special agent at the BCA.

158.    It was during his tenure that the DPS database was largely developed in its current format.

159.    On information and belief, misuse of the DPS database has been well-known to Commissioner Defendants.  At a Legislative Audit Subcommittee hearing in February, 2013 at which Commissioner Dohman testified, the testimony of the Legislative Auditor revealed that at least 50% of law enforcement officers are misusing the DPS database by accessing, disclosing, or using the driver license personal information for an impermissible purpose.

160.    On information and belief, Commissioner Defendants knew this, and knowingly disclosed the information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.

161.    Experts in the field of police training report that the primary complaint of many police departments is that law enforcement personnel misuse private information.

This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

## COUNT I: VIOLATION OF THE DPPA, 18 U.S.C. § 2721, et seq.

*(Against All Defendants)*

162.   Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through  161 as though fully set forth in this Paragraph 162.

163.   Potocnik provided personal information to the DPS including his address, color photograph, date of birth, medical information, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

164.   The DPS Database also maintained Potocnik's driving record.

165.   Potocnik did not provide his consent for any of the Defendant Individuals to obtain, disclose or use, or for any of the Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, his private information for anything but official law-enforcement business.

166.   Intentionally obtaining, disclosing or using driver's license information without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

167.   The DPPA provides redress for violations of a person's protected interest in the privacy of his motor vehicle records and the identifying information therein.

168.   The Defendants, each of them, have invaded Potocnik's legally protected interest under the DPPA.

169.     Defendant Commissioners or the employees they supervised knowingly disclosed Potocnik's private personal information from his driver's license for purposes not permitted under the DPPA.

170.     According to the Department of Vehicle Services and the Defendant Entities, the Individual Defendants knowingly obtained, disclosed or used Potocnik's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a).

171.     None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Potocnik's private information.

172.     By the actions described above, each Defendant Individual was acting within the scope of his or her employment when he or she obtained, disclosed or used Potocnik's personal information from the DPS Databases for an impermissible purpose.

173.     Individual Defendants knew that their actions related to Potocnik's Private Data were in violation of the DPPA.

174.     Defendant Entities and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Potocnik's private personal information by Individual Defendants.

175.     Individual Defendants knowingly used Defendant Entities' computers, passwords and passcodes to access Potocnik's private information.

176.     The sheer volume of personnel that obtained, disclosed or used Potocnik's private personal information makes apparent that Defendants' use was not permissible.

177.    Defendant Entities are each vicariously liable for the acts of Defendant Individuals.

178.    By the actions complained of, Commissioner Defendants and DPS Does are jointly liable for the acts of Defendant Individuals.

179.    Potocnik has suffered harm because his private information has been obtained and viewed unlawfully.

180.    Potocnik suffered and continues to suffer harm by virtue of the increased risk that his protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

181.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

182.    Individual Defendants, Supervisor Defendants, Commissioner Defendants, and DPS Does each willfully and recklessly disregarded the law, entitling Potocnik to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. section 549.20.  Plaintiff is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

183.    In addition, under the DPPA, Plaintiff is entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1).  Potocnik need not prove actual damages to receive said liquidated damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983

*(Against Individual Defendants, including John and Jane Does)*

184.   Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 183 as though fully set forth in this Paragraph 184.

185.   The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

186.   The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

187.   At no time did Potocnik behave in a manner that would provide any legal justification for the above-described invasion of his privacy.

188.   The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment to the Bill of Rights.

189.   Individual Defendants' viewing of Potocnik's personal information was unauthorized, unjustified, and excessive, and violates the Fourth Amendment, the laws of the United States and the laws of the State of Minnesota.

190.   By the actions described above, each Individual Defendant Law-Enforcement Personnel, acting under color of state law, violated and deprived Potocnik of his Fourth Amendment Rights.

191.    The acts of each Defendant Law-Enforcement Personnel, acting under the color of state law, constituted an invasion or repeated invasions of Potocnik's clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

192.    The DPPA creates an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Potocnik's information.

193.    Each individual law-enforcement personnel, acting under color of state law, knew that his or her actions violated and deprived Potocnik of his clearly established statutory rights under the DPPA.

194.    Each Individual Defendant law-enforcement personnel deprived Potocnik of his federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Potocnik's rights would be violated by his or her actions.

195.    Each Individual Defendant law-enforcement personnel was deliberately indifferent to Potocnik's statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of his Private Data.

196.    As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Potocnik was damaged in an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

197.    Punitive damages are available against Individual Defendant law-enforcement personnel for their reckless and callous disregard for Potocnik's rights and

their intentional violations of the federal law, and are hereby claimed as a matter of

federal common law, <u>Smith v. Wade</u>, 461 U.S. 30 (1983), and, as such, are not subject to

the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

198.    Plaintiff is entitled to recovery of his costs, including reasonable attorney

fees, under 42 U.S.C. § 1988.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983

*(Against Entity Defendants and Supervisor Defendants, including John, Jane and Entity
Does, for violation of 42 U.S.C. § 1983)*

199.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 198

as though fully set forth in this Paragraph 199.

200.    Individual Defendants' numerous accesses of Potocnik's private

information are not unique, but one example of how frequently such law-enforcement

agencies customarily violate the DPPA by accessing Private Data of persons without

having any legitimate or permissible reason for doing so.

201.    Persons familiar with police departments and those involved in teaching

supervisors how to train and hold accountable their subordinate law-enforcement

personnel have been told by those supervisors that the unlawful and impermissible

accessing of private information is among the most frequently committed wrongs by

police, for which they are seldom if ever held accountable.

202.    The foregoing information, other information to be presented at trial, and

evidence reasonably likely to be determined after full discovery demonstrate that the

improper access of citizens' Private Data by Defendants for their own personal and

private uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to Defendant Supervisors and Commissioner Defendants.

203.   These customs and practices by Defendant Individuals are at variance with the written rules set down by the Entity Defendants and Commissioner Defendants, but these formal rules are widely and knowingly disregarded.

204.   Given Entity Defendants' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

205.   Defendant Entities and Defendant Supervisors of the law-enforcement personnel accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel.

206.   The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the Entity Defendants.

207.   These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff, whose information has been wrongfully accessed.

208.   Defendant Entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

209.    Supervisor Defendants, up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity.

210.    Defendants' liability is due to their actual and constructive knowledge of this practice.

211.    Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

212.    Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Plaintiff, whose information has been and continues to be wrongfully accessed.

213.    In addition, Defendant Supervisors of the law-enforcement personnel, up to and including the chief police officer in each of Defendant Entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the Private Data of citizens, including Plaintiff, without a proper, lawful, permissible, justifiable purpose for doing so.

214.    This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiff.

215.    The federal rights of the citizens, including Plaintiff, whose information is improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

216.    Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on the federal rights of the citizens, including Plaintiff, who would often be unaware of that access.

217.    It is yet unknown whether a system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the DPS Databases by personnel.

218.    It is yet unknown whether any attempt has been made by Entity Defendants and Supervisor Defendants to provide redress and assurance to the persons, including Plaintiff, whose DVS information has been wrongfully accessed by the Individual Defendants named in this Complaint, or by other officers in the municipalities named in this Complaint.

219.    As a direct and proximate result of the acts and omissions of the above-named Defendant Entities and Defendant Supervisors, Potocnik has endured and continues to endure physical and mental suffering, and has been damaged in an amount yet to determined and of a continuing nature, but believed to be well in excess of One Million ($1,000,000) Dollars.

220.    Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Potocnik's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, <u>Smith v. Wade</u>, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

221.    Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983

*(Against Commissioner Defendants and DPS Does)*

222.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 221 as though fully set forth in this Paragraph 222.

223.    As DPS Commissioners, Campion and Dohman, along with DPS Does, were and are responsible for creating, maintaining, and providing access to the database that included Plaintiff's Private Data.

224.    Defendant Commissioners and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiff's Private Data, and have the ongoing duty to prevent such unauthorized accesses.

225.    Commissioner Defendants and DPS Does failed to prevent unauthorized access to the database, including Plaintiff's Private Data.

226.    The actions of Commissioner Defendants and DPS Does, as alleged, violate the rights of the Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

227.    On information and belief, Commissioner Defendants and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

228.    From 2003, Commissioner Defendants and DPS Does allowed unauthorized access of Potocnik's Private Data such that over 200 law-enforcement personnel from 40 different departments accessed his information over 400 times.

229.    On information and belief, Commissioner Defendants' and DPS Does' efforts have been insufficient to prevent future unauthorized access of Plaintiff's and other individuals' private, personal information.

230.    Commissioner Defendants and DPS Does have sanctioned the constitutional violations by the Individual Defendants through their failure to remedy the policy, custom and practice of officers' and employees' unfettered and unauthorized access to the database.

231.    Commissioner Defendants and DPS Does have been grossly negligent in supervising subordinates responsible for implementing a law-enforcement database that prevents unauthorized access to private, personal information.

232.    On information and belief, Commissioner Defendants and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

233.    Commissioner Defendants and DPS Does, acting under the color of state law, were deliberately indifferent to Potocnik's constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of his Private Data.

234.    Commissioner Defendants and DPS Does failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with drivers' licenses.

235.    Commissioner Defendants and DPS Does are jointly liable for the use, disclosure, or access of Potocnik's Private Data for each Individual Defendants' access.

236.    As a direct and proximate result of the acts and omissions of Commissioner Defendants and DPS Does, Potocnik was damaged in an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

237.    Punitive damages are available against Commissioner Defendants and DPS Does for their reckless and callous disregard for Potocnik's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

238.    Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT V – VIOLATION OF 42 U.S.C. § 1983
### (Against DPS Commissioner Dohman in Her Individual and Official Capacities- Prospective Relief)

239.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through ___ as though fully set forth in this Paragraph ___.

240.    Defendants' misconduct reflects a custom and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout DPS, all in violation of state policy to protect its citizens'

Private Data and to enforce the DPPA and to uphold constitutionally-guaranteed privacy protections.

241.    The acts and omissions of Defendant Dohman were the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated throughout the DPS.

242.    Not only were the violations of privacy rights tolerated, but the persons who were in charge of overseeing compliance with the DPPA instead obstructed the efforts of persons who sought audits or other information regarding the violations, again in violation of state policy requiring the enforcement of the DPPA and requiring openness and transparency in government, and guaranteeing the rights of citizens to information such as these violations.

243.    The lack of monitoring regarding records acquisition practices and the failure to take action to stop or prevent these practices demonstrate the state of mind of the Commissioner and Dohman.

244.    These customs and practices further demonstrate Dohman's deliberate indifference to the federal statutory and constitutional rights of citizens, including Plaintiffs and class members, whose information was unlawfully obtained, used, collected, stored, disclosed and disseminated.

245.    As a direct and proximate result of the acts and omissions of the DPS Commissioner, prospective injunctive relief is warranted permanently enjoining the DPS Commissioner from allowing the unfettered and unauthorized access by its employees to view private information in violation of federal law and further requiring her and/or her

successors to set in place policies, procedures and/or practices prohibiting the unlawful accessing, viewing, collecting, storing, disclosing and disseminating of private data in the future, as well as a mechanism to audit or monitor compliance with these procedures.

246.    Plaintiffs and class members are entitled to recover their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## JURY DEMAND

247.    Plaintiff demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Plaintiff Brian Potocnik prays for judgment against the Defendants as follows:

1.    A money judgment against all the Defendants for liquidated, actual and compensatory damages in an amount in excess of One Million ($1,000,000) Dollars and punitive damages in an amount to be determined by the jury, together with his costs, including reasonable attorney fees, under the DPPA;

2.    Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3.    Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4.    An injunction, permanently enjoining all Defendants from viewing Plaintiff's private information in violation of the DPPA, unless necessary for law enforcement purposes; and,

5.      For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**


Dated:  May 9, 2013                    s/Jonathan A. Strauss
                                       Jonathan A. Strauss (#0279602)
                                       Lorenz F. Fett (#196769)
                                       Mark Zitzewitz (#0289073)
                                       Kenneth H. Fukuda (#0389301)
                                       12 South Sixth Street, Suite 1242
                                       Minneapolis, MN  55402
                                       (612) 756-7100
                                       Fax: 612-756-7101
                                       jons@sapientialaw.com
                                       larryf@sapientialaw.com
                                       markz@sapientialaw.com
                                       kennf@sapientialaw.com

                                       **ATTORNEYS FOR PLAINTIFF**